The next case today is Richard Peltz-Steele v. Umass Faculty Federation et al. Appeal number 22-1466. Attorney Stevens, please introduce yourself for the record and proceed with your argument. May it please the Court, Riley Stevens on behalf of Appellant Richard Peltz-Steele. And with the Court's permission, I would like to reserve two minutes for rebuttal. You may. Your Honors, Professor Peltz-Steele's submission boils down to the simple proposition that the First Amendment does not permit the government to force this association upon him without his consent. The District Court erred in holding that this Court's decisions in Reisman and Giagostino foreclosed plaintiff's claim here. Giagostino, for one, relied heavily on the Supreme Court's decision in Abood, and Janus since made clear that Abood was an error. Reisman, on the other hand, postdates Janus, but the plaintiff there waived the argument that Janus required Giagostino be revisited. That question, therefore, remains one of first impression for this Court. But what do you do with our statement in Reisman that Janus does not undermine Giagostino and that Giagostino post-Janus continues to remain good law? Yes, so to begin with, Your Honor, I think given that the Court had already found the argument waived, I think that that discussion has to be dictated. It can't be part of the holding. What is actually the opposite in the opinion? I think it first says the reason it doesn't undermine it is because there was no payment involved in this situation and there was a payment required in Janus. And then it goes on to say, to the extent there's any other argument, it hasn't been made. Sure, Your Honor. Well, I forget exactly what the order was, but I guess— That's the order. Fair enough. Fair enough. I guess what I would say to that is simply that if the Court holds that the argument is waived, it seems odd to me to say that, therefore— What it says is that there's an initial distinction that can be made between the two, so that under the law of the circuit doctrine, there's no basis for saying that just from Janus, it undermines Giagostino because there was a payment in the one and not— there was a payment in Janus and there's no payment in this context. And then it says, essentially, if there's anything else you have to say as to why that distinction isn't enough, it wasn't developed there. So is there something else that you have to say? Well, sure. Well, I think the distinction about the payment versus the nonpayment, it is a factual distinction between the cases, but the underlying logic of Janus is not specific to the money. It's specific to the union's role as— What supports that position in Janus? What's the language in Janus that's divorced from the required payment that supports the idea that Janus would have come out the same way even if there had been no payment required? Well, it's a little—the facts of Janus were specifically— the claim in Janus was specifically about the money, so I don't know how you can divorce— If that's the case, the reason this is mattering is it's not to say that in principle there may not be a point to be made, but we have a law of the circuit doctrine. That's what Riesman's saying. We have a prior case in DiAgostino. We don't lightly overrule or, as a panel, or treat as overruled or undermined a prior panel's decision. That's just the law of the circuit doctrine that's being applied. We do, and there's intervening Supreme Court precedent that undermines its logic. Riesman says just what you just said.  That being so, Janus doesn't undermine DiAgostino. If there's some other argument as to why it does, that hasn't been made. So do you have some other argument? Well, yeah, I didn't mean to say that it's impossible to divorce the payment from the logic of Janus. I just meant to say that the claimant issue there was about the money, and therefore that's what Janus was most focused on. But the logic of Janus is about the fact that a public sector union, in engaging in collective bargaining, is engaged inherently in political speech. That is the logic of Janus that we think extends here and is not limited to the payment. About four minutes remaining. While the union may be engaged in that, the problem was the payment forced an association with that speech by the employee there. How does the mere fact that the union is the representative in the bargaining do the same? And what in Janus suggests that we have to conclude that when DiAgostino held the opposite? Because, Your Honor, what Janus says is that because the Abood regime was that non-members didn't have to pay all the money, they didn't have to pay for the political action committee, but they had to pay for the bargaining cost, the agency fee, right? And Janus says even those bargaining costs involve First Amendment activity, involve political speech on behalf of the union, right? And so that is – and so it is in that sense that even that bargaining at the bargaining table is a political act under the Janus decision. And how does being the representative, the exclusive person that they'll deal with about those issues, on behalf of the unit, which is what Reisman says is all that the state law says, which is all that the state law says here, how does that force an association of the individual with the speech being offered by the union in that bargaining? Because by requiring Professor Peltz-Steele to accept the union's representation, you are requiring him that they are allowed to speak on his behalf and negotiate away or in support of his rights without his consent. Only in so far – this is the logic of D'Agostino – only in so far as it is doing that for purposes of dealing with the unit, the bargaining unit. Yes, Your Honor, and for one thing, we think, as we argue in the brief, we think that there's some distinction between the Massachusetts law here, which specifically talks about the union representing the employees, and the situation in – actually, was it in – well, it was in Reisman that – it was in Reisman that it was the main law, but it was in D'Agostino. You know, even there, that holding, we think, still is predicated on the abode understanding that it is not compelled – that it is not an association that has First Amendment character. And Janus said that that understanding of the relationship between the employee and the union is incorrect because – But what I'm saying is, in Janus, because there was a payment required, the individual employee in their individual capacity was forced to associate with the speech of the union in the bargaining process. Well, they were similarly indicative that the individual, as an individual, is supposed – is required to do that. What language in Janus suggests as much? Well, the language that Janus suggests as much is actually Janus talks quite a bit about exclusive representation and calls it – you know, it says, a significant impingement upon associational freedoms that would not be tolerated in any other context. Correct, but precisely by saying that, it acknowledges that in the context of the public employee relationship regime, and it cites Connick versus Pickering in that context, that is a different situation. So it's hard to read that passage as supporting your position enough to overrule or undermine D'Agostino. Because that passage is specifically saying that this is a different context. Well, no, I think what that passage is saying, Your Honor, is that this sort of association does impinge associational freedom. So the idea that the union is not actually representing – is not actually engaged in an association with people who are not giving it money, I don't think is consistent with Janus. But can I just finish that just so I get your response? Of course. This is a key passage. Of course, Your Honor. For your argument, that sentence starts, it is also not disputed that the state may require that a union serve as the exclusive bargaining agent for its employees. Since the sentence begins that way, how can you read that sentence to be a basis for undermining the logic of D'Agostino? Well, because I think the sentence begins that way, it's simply the thing that courts often say when they discuss a matter that's relevant to their opinion, but they do not reach the final question of exclusive representation because that was not the claim that was raised by Mr. Janus in that case. So, Mr. Stevens, the union is correct in characterizing your argument as an attack on the exclusive representation of a bargaining unit of which, as an employee of UMass, your client is a member of the bargaining unit. That's what your case comes down to. I think I have to agree, Your Honor. Yes, I think that's correct. Just to be clear, in your reply brief, you admit properly, I think, that your client does retain all sorts of speech rights as an individual to criticize UMass, to offer other solutions to the problem, and you also say, as a public employee, he has the right to do that, totally apart from this issue of exclusive representation. Yes, Your Honor, so I think that's right. I think we do say in our brief, and I think it's undeniably true, that he does have, separately and apart from this situation, he does have the ability, like any citizen, to speak or write or advocate in public for things that he cares about. The fact that one has other outlets or other ways in which they can speak does not mean that you can compel their speech in one particular area simply because they can speak in other ways in other places or other times. So when you alleged in the complaint that UMass, which first came out with a proposal to lay off people and then the faculty union said, no, we don't agree, we'd rather everybody took a pay cut, and you allege that there were other options which UMass could have considered, your client was always free to describe those other options to UMass in any way he chose to do so, apart from forcing the union to lay out those options to the university. Well, I don't really think that's true, Your Honor, because part of being the exclusive representative means that you are the exclusive person with which the university can bargain, and therefore... No, no, no, that's a different issue from the speech issue. Your client was always free in his capacity as a citizen and as an employee to lay out all of those options. As a practical matter, I'm not sure, he was not invited to the room with the negotiations, so I'm not sure... No, no, no, it has nothing to do with whether he was invited into the room. Well, I just mean, I'm not sure offhand when he found out about what was being discussed and what was decided upon. I think he, I don't know that he thought ahead of time in order to object, is what I'm trying to say. Maybe, if I understand it, putting the speech for speech aside, or you've got an associational concern. And I understand that the associational concern is that they're treating you as if you're part of this group that's making views known during elective bargaining. And they can't force that to happen. That's the basic idea, right? I think it's fair to say that's the basic idea, yes. Okay, and that, how much of that is dependent on the way we understand the text of the statute? So, two examples. One statute says, we treat as the exclusive bargaining unit, the union, and the union represents the individual views of Professor, your client's name. That's one statute, okay? Number two statute says, we exclusively would deal with representative of the union, and the union represents the bargaining unit. Right. Are those the same from your perspective, from a First Amendment perspective? Is there a difference between the two? From a First Amendment perspective, I think they're pretty close. I think that where there comes a difference is the fact that that was part of the opinion in Reisman, and so, therefore… I'm just asking you, your view, is there a difference from a First Amendment? I understand why the first example, you think that creates an associational problem because it's specifically saying your individual person is now an associated and is being represented as views, and the government can't make that happen. Sure. Is the second one where it says the exclusive representative represents the bargaining unit, is that also a problem just because your client happens to be a member of that bargaining unit? Well, your Honor, I think as a matter of first principle, I don't think there is…I think the First Amendment problem exists in both hypotheticals. I think as a matter of the circuit's law, I think Reisman supports the second of those two as not being a problem, and so, therefore, as a law of the circuit, if I can't convince you to revisit Reisman, I'm going to…I would have to accept that second one from the circuit. If that's right, then I think the key thing here is can we distinguish this language? I understand you make an argument as to why. What is your reason for concluding that the first…that the example about where it just says the bargaining unit doesn't mention members or anything, just says the bargaining unit? How is that a First Amendment problem? What about that suggests that you're being forced to associate with any views rather than they're just picking who to deal with? Well, I'm sorry. We're talking about the bargaining as entity situation or hypothetical. All the statute says is we choose as our exclusive representative for the bargaining unit, the union. Sure, Your Honor. Well, I mean, I think that kind of approach that in treating the…you know, treating the bargaining unit as this kind of women liability corporation kind of situation where it has no association with the underlying, you know, members, shareholders, people represented. I just think that's a very artificial way to view it and to say that, well, you are a member of…you know, if you are represented by this organization… Because this keeps coming up in the circuits, it's helpful for me to understand it. One last turn on it. If it simply said we will deal exclusively with the union in setting the employment conditions for the bargaining unit, would there be any First Amendment problem even on your view? Well, I think the right that we're claiming here is not necessarily the right to an audience, right? It's not the right to be listened to. I didn't say that. I'm just asking on the associational plan. Right. We will deal with the union as exclusive means of determining the conditions of employment for the bargaining unit. Does that raise an associational concern for you? Well, I think there's an associational concern. I think the concern is this, right, that ultimately, you know,  inevitable. Now, I will grant you that essentially what Knight says is the government is not required to listen to you. They're not required to give you an audience. They can choose who they want to negotiate with, right? And there may be a practical problem for Professor Peltz-Steele at the end of this that he can't claim any right to be listened to, right, to negotiate. But I still think there's the compelled association when they choose to speak on his behalf. Okay. Thank you. Thank you, Attorney Stevens. Please go ahead and mute your camera. Thank you. At this time, would Attorney Casey please unmute and introduce himself on the record to begin? He has a five-minute response. Good morning, Your Honors, and may it please the court, Tim Casey on behalf of the State Appellees. Your Honors, this is the third time that a plaintiff has come to this court asking the court to strike down exclusive representation, which has been described by courts as a basic building block of labor law and collective bargaining both in the private and the public sector. They've done so by trying to leverage what the Supreme Court has said about agency fees as compelled speech to argue that exclusive representation constitutes compelled association. But this court has twice rejected such arguments in D'Agostino and Reisman, and this court may reject this third challenge based solely on the law of the circuit doctrine. The only conceivable change circumstance that would warrant departure from this doctrine is the Supreme Court's decision in Janus. But this court addressed Janus in Reisman and concluded that it could not say that Janus provided a basis to depart from its decision in D'Agostino. That is enough for this court to affirm the judgment below in this case. But to avoid any doubt, even if it were open for this court to reconsider whether Janus changed the law in this area, several features of that decision from the Supreme Court make clear that it did not call into question the validity of exclusive representation. Judge Barron, as you noted, one of the most critical passages in that decision was the court's mention that it is not disputed that a state may recognize an exclusive representative. The court went on to say it simply draws the line at requiring or allowing states to require that non-union members of the bargaining unit pay a fee to financially support the activities of the union. The court also indicated that a state's interest in labor peace, which it defined as avoiding the chaos and the inefficiency that would ensue if a public employer had to negotiate with multiple unions or with employees individually, was a compelling governmental interest. It simply found that that compelling interest could be achieved through more narrow means than requiring non-union members to pay an agency fee. Mr. Case, if you'll just indulge me. Oh, go ahead. Sure. I just wanted to note a few other features of Janus. I think it's noteworthy that the court never mentioned Knight and has never mentioned Knight in these cases. The way it mentioned Abood repeatedly, in first in the Knox decision and then in Harris against Quinn, and finally in Janus, the court made very clear that it viewed Abood, which is again about agency fees, as constitutionally problematic and signaled its openness to overruling that decision. In contrast, it has not said a word or cited once the Knight decision in these cases. I take it you don't disagree that Knight is about the speech more than the associational piece, or do you disagree with that? I do disagree with that, Your Honor. There is at least reference in that case to the associational rights of the faculty members. There is mention of the- The claim there, though, was a denial of the right to be heard, not a force of associational claim. Is that wrong? Well, I think that that is what Mr. Peltz-Steele argues, and I think that is an unduly narrow reading of Knight. It's true that the focus in that case was about whether the government can be able to listen or to provide an audience to the speech of the non-union members of the faculty, but the court went on to say, and I don't think this is dicta, as Mr. Peltz-Steele argues, that because individual faculty members could organize their own groups, could speak out as they wish, as Judge Lynch mentioned earlier, they can speak out, including in opposition to the positions of the union, that their speech and associational rights are not violated. So I do think there is reference- In that sense, that their ability to associate outside of the context and their ability to speak outside of the context is not restricted, and I definitely think Knight says that. I take it the force of the claim that's being made to us, beyond that, is the contention that I'm being forced to associate with the union. That, I don't think, Knight itself squarely addresses, though DiAgostino certainly does. If you just indulge me with my hypothetical, or artificial as it is, but it will help me conceptually just to get a sense of how you see it. If the statute did say, we will deal with the union as the exclusive representative, and it represents the individual and personal views of the members of the faculty, would that create a First Amendment problem? If the statute itself said that, well, that would be contrary to what the Supreme Court and many other courts have said, which is that public employers negotiate with unions with the understanding that the union does not speak with one voice. It does not represent the views- I'm just asking, from a First Amendment association, what would that create a problem? I think it would create more of a problem than the statute edition here. Just to help us here, your reading must be of the statute that when it's referring to all members of the bargaining unit, and words to that effect, it can't plausibly be read to be the kind of hypothetical statute I'm talking about. Is that right? That's right, Your Honor, and if I may, I apologize, I know my time is up, but I think you will find in Sections 4 through 6 of 150E, references to the exclusive representative representing both the employees in the bargaining unit and the unit itself. I don't think that that is a constitutionally significant distinction. I think that regardless of whether you conceive of a union as representing the unit or the employees in the unit, the fact remains that it represents them only in the context of negotiating a labor contract, and if they wish, in handling grievances on their behalf, though they're free to handle their own grievances, and they have a concomitant duty of fair representation. So they have to represent the interests of employees without regard to union membership, and they have to treat similarly situated employees the same. And then there are all the pieces we've discussed, which include individual members' right to speak out, to form groups as they wish, to say the union is completely wrong about this or that. All of that adequately protects the speech and associational rights of the employees in the bargaining unit. Mr. Casey, I'd like to pursue Judge Barron's hypothetical. I think the Massachusetts statute references to employees really is tied directly to the bargaining unit, and the union represents the bargaining unit, and the bargaining unit is composed of employees. But let's go back to the hypothetical. Suppose a state misguidedly were to pass a statute that makes it clear that in the state's view, the statements of the union represent the views of each of its individual members. I can't imagine a state doing such a thing. The first argument would be that's preempted by federal labor law. But let's go beyond that. That then becomes a form of kind of forced association in the public mind, because the state by statute has said that the union represents the individual views of the employees, all of them in the unit. So wouldn't that at least hypothetically raise First Amendment concerns? Hypothetically it could, Your Honor. I agree with you that that seems exceedingly unlikely that a state would do that. But it is noteworthy that what some of the cases in the compelled speech and compelled association context talk about is whether a reasonable observer would believe that the person agrees with and supports the speech that is being spent. The hypothetical I just gave you is a declaration of state policy that a reasonable observer could look at and decide, well, it may be a little weird, but the state has asserted this. I agree, Your Honor, and that's the point that I was going to make, which is that that would contribute to a sense that, however odd it might be, that it could further an appearance that employees agree with what their representative is saying because of the statute. But absent something like that, which would be extraordinary and unusual, the case law and the statutory limitations on the authority of a union make clear that, and this in a way simply reflects common sense, that no one would expect or assume that just because a union represents a bargaining unit in negotiating the terms and conditions of employment, does that mean that all members of the bargaining unit agree with and support the positions taken by the union. And if that's right, then that's why the payment is such a salient thing in Janus, because there's no denying that you're being forced to manifest some support for it because your personal funds are going to it. Right, you're providing individual personal financial support. Now, prior to Janus, the position, as you know, was that that was not support for political, ideological speech. It was simply to avoid free riders so that if you are benefiting from a labor contract and from a union representing you during a grievance process, you ought to contribute to that effort financially. But be that as it may, that's no longer the law Janus is, but Janus does not disturb D'Agostino or Reisman, and so this court may rely on its prior decisions in affirming the judgment below. Thank you. Thank you, Mr. Casey. At this time, please mute your camera. Attorney Carabello, please introduce yourself on the record to begin your five minute response. Thank you and good morning. May it please the court. My name is Jacob Carabello and I represent the defendant appellate union, which is the UMass Faculty Federation Local 1895. And to start, I'd like to say that the union agrees entirely with the state defendants that this court's recent decisions in D'Agostino and Reisman are law of the circuit that entirely foreclosed the attack on exclusive representation that is at issue in this appeal. I just would like to make a couple of points in response to some questions that have come up earlier in the argument. First, I wanted to expand on why Janus not only does not provide grounds for this court to to abrogate D'Agostino or to this court to think that D'Agostino would have come out the other way. But if anything, reaffirms exclusive representation. I know Chief Judge Barron, you pointed to the passage where the court has not disputed that exclusive representation is constitutional. There's also an important part of Janus where responding to the dissent where the dissent pointed out or in the dissent's view that Janus and the elimination of agency fees would require states to make a significant extent of legislative response. This is going to the sorry decisis point. The court responded to that in footnote 27 and said that's not correct. States can keep their labor relations systems exactly as they are other than they can't require fair share fees. And then it concluded by saying in this way, states like Illinois, which was the stated issue in Janus, can follow the model of the federal government and the other states that had exclusive representation but did not pair that with fair share fees. So for that reason as well, read Janus as overruling D'Agostino really is not supportable. On the Supreme Court's decision in Knight, I know Chief Judge Barron, you had asked about that. I do think Knight is fairly read broader than just about the right to participate. That's really what's at issue in Part 2A of the court's analysis in Knight. And then starting on page 288, the court says, well, you know, although there's no constitutional right to participate in academic governance, the First Amendment guarantees the right to speak and associate. And in response to that, the court goes on to say the rights of speech and association or freedom not to associate are in no way impaired by exclusive representation. You know, the precise arguments that were made by the plaintiffs in Knight, I do think it's fair to say, differed to some extent to how they've been presented in this more recent wave of challenges to exclusive representation. But I think that the court's holding in Knight, and that's Part 2B, is broad enough to foreclose these challenges as well. And that's been the conclusion of every circuit that has addressed one of these sort of second wave exclusive representation challenges. Mr. Carabell, you said there were 20 of these cases, and you provided us with reported decisions. Is the issue pending before any other circuit right now? I don't believe that the issue is pending before any other circuit that has not yet since Harris versus Quinn in 2014, which is sort of the starting point when the second wave began. I don't think there's any there's no certain where it's been pending. It hasn't already addressed it since then. As the court knows from reading the briefs, this has gone up to the Supreme Court a number of times recently, and the court has denied, I think, close to or double digit cert petitions. That, of course, doesn't mean the court may not at some point reconsider the issue, although we don't think that there's any grounds for that. But we think there's certainly no prospect that a circuit split will emerge on this point in the near term. And I'm happy to address other questions if the court has no further questions, and we would ask the court to to affirm the district court's judgment. Thank you. Thank you. Thank you, counsel, at this time, if you could mute your camera and your microphone and Attorney Stevens, you have a two minute rebuttal, if you would please unmute and introduce yourself again to begin. Thank you, Riley Stevens, again, on behalf of appellant Richard Pellett Steele, am I coming through unclear? Yeah. All right. So I think just a handful of things, your honors. First, on the reasonable observer point, it it seems to me the reasonable observer is going to expect that the person being represented is a part of the is is. A part of the group that is putting forward these proposals now is do people think that maybe there's a minority within the union that disagrees with what the majority wants to do and that sort of thing? I'm sure that is true and that happens, but that doesn't mean that minorities get to be brought along just because they can say they can say, well, you know, I'm really frustrated. I don't like this union. It drives me crazy. I don't really see how that solves a compelled association problem simply by the fact that you can say you can register your dissent at the end of the process. And I don't nor do I think the duty of fair representation really carries you one so far because and fairly enough, the union has to represent all sorts of interest and and views and ideas among the bargaining unit. I guess what we would submit is that the proper understanding the First Amendment is they should do that on behalf of people who have agreed that representation, who have determined that that is in their interest and that they are willing to go along with the majority of the bargaining unit as to whatever matters come up. And I don't think that's a justification for forcing dissenters to also come along. If the court has no further questions, I will leave it at that. Thank you very much. That concludes the arguments for today. The session of the Honorable United States Court of Appeals is now recessed. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.